## NATIONAL LABOR RELATIONS BOARD
### v. WHITTIER MILLS CO. et al.
#### No. 9423.

Circuit Court of Appeals, Fifth Circuit.

Nov. 22, 1941.

726

726

See, also, 5 Cir., 111 F.2d 474.

Robert B. Watts, Gen. Counsel, National Labor Relations Board, Gerhard Van Arkel and Winthrop A. Johns, Attys., National Labor Relations Board, all of Washington, D. C., for petitioner.

John Wesley Weekes and Chas. Murphey Candler, Jr., both of Decatur, Ga., and James A. Branch, of Atlanta, Ga., for respondents.

Before HUTCHESON and HOLMES, Circuit Judges, and UNDERWOOD, District Judge.

HUTCHESON, Circuit Judge.

The petition, filed June 13, 1941, alleges that in disobedience of an order and decree of this court, of date July 9, 1940, requiring respondents, upon request, to bargain collectively with Textile Workers Organizing Committee, they "have failed and refused to comply fully with and have disobeyed, resisted and disregarded * * * the aforesaid decree." Instead of bargaining collectively, in good faith with the union, as required by the decree, they "have thwarted and obstructed true collective bargaining by presenting and insisting upon many unreasonable demands and conditions and by granting individual and collective wage increases and adjustments without notice to or consultation with the union as appears in Exhibits 1 to 20 exclusive attached to the petition," all in violation and contempt of the requirements and commands of the decree. It prays for a show cause order, a judgment holding the respondents in contempt and for such other orders as are necessary to enforce the decree.

The respondents, fully answering the petition, flatly deny that they have at any time or in any way refused or attempted to refuse to bargain with the union, or in any way refused or attempted to refuse to obey or carry out the decree. They flatly deny that they have in any way "thwarted and obstructed true collective bargaining by presenting and insisting upon many unreasonable demands and conditions and by granting individual and collective wage increases and adjustments without notice to or consultation with the union." They allege that, on the contrary they have in the utmost good faith and earnestness, dealt with the representatives of the union in an endeavor to reach an agreement; that in extended bargaining conferences, they have received and considered propositions from the union; have made counter propositions of their own; have fully and fairly discussed the propositions and counter propositions in conferences and have in every way endeavored to arrive at a fair and reasonable bargaining agreement for their mills. They particularly deny that at any time they made any demands which they deemed or now believe to be unreasonable, and allege that, on the contrary, they endeavored in good faith to reach an agreement, having an earnest and sincere desire to do so.

They deny that any wage increases or adjustments were granted for the purpose of thwarting or obstructing collective bargaining with the union. They allege that they granted no wage increases before the union refused to bargain further with them and broke off negotiations. There was "only an adjustment of wages of a few employees of Whittier Mills and two of Silver Lake Company, made, because of the fact that those particular employees had extra work put on them because of the installation of additional machines", and they support this with an affidavit. As to the wage increases granted in February, they say: "That some two months after the union had refused to bargain further with the respondents and had so notified respondents, and after respondents had been informed, and upon that information which was accurate, believed that the Regional Director had, on December 11, 1940, reported to the Board, that the respondents had bargained in good faith and that the cases should be closed, the respondents by reason of changed conditions, and as a result of repeated and insistent demands of individual employees and groups of employees, granted an increase in wages." They allege that this was not done with any idea, desire, or purpose of thwarting, or obstructing the union; that the union had expressly refused to bargain with respondents; and that the wage increase was granted pursuant to respondents' advice given the union during the conference that as soon as conditions warranted, wage increases would be granted. In support of this they attach positive affidavits.

Finally, respondents traverse all of the matters set out in the exhibits, including the affidavits of Brazzell, the union representative, which purport to declare that respondents, at any time, bargained or proceeded otherwise than in good faith and a desire to fully recognize and carry out the provisions of the decree.

The pleadings standing thus, respondents insist that their answers have not only definitely denied the conclusions of the petition, that they have refused to bargain but have shown affirmatively that they have in good faith endeavored to do so; and that the issues being submitted here on petition and answer, there is nothing on which this court could proceed to base a finding or judgment of contempt. The petitioner on its part insists that the denials are merely formal, that the facts are all admitted and that only one conclusion may be drawn from them, that respondents have deliberately refused to bargain.

This is a proceeding in civil contempt to obtain the benefits of a decree and not one in criminal contempt to hold the respondents guilty of a crime, and the question for decision is not one of the intent with which, but simply whether, certain acts were done. But it goes without saying that in such a proceeding, the burden is on the petitioner to establish the facts necessary to support the order and that since the matter is submitted on the petition and answer and not on evidence, the facts relied upon must be admitted in the answer and if any fact, material to the finding of contempt, stands unadmitted, the court may not find respondents in contempt. It goes also without saying that petitioner is right that the question of the intent with which the claimed acts were done is not material, unless the acts are equivocal and resort to the intent with which they are done is necessary to make their meaning clear. If the petitioner is right therefore in its claim that what was done stands admitted, and that no conclusions can be drawn from the doing except that respondents have deliberately refused to bargain, they may be held in contempt despite the denials in their answer.

Examining plaintiff's petition and the admissions in defendant's answer in the light of these views, we find wholly unsupported petitioner's contention that the respondents have admitted facts establishing their contempt. Instead of, as the petition claims, the record showing a deliberate and contemptuous refusal to bargain, it shows a painstaking and conciliatory effort on the part of the respondents to reach an agreement, and that the only reason that an agreement was not reached, was because certain things which respondents, in good faith, deemed were necessary to the agreement would not be agreed to by the union, and certain things which the union, also in good faith, deemed necessary to the agreement would not be agreed to by the respondents. In short, the bargaining went on the rocks because each bargainer was endeavoring to get into the agreement the things he wanted, and the union representatives lost patience. In such a situation, it cannot be said that the respondents, in violation of this court's order, refused to bargain. On the contrary, the record

shows that the respondents never refused to negotiate but that after respondents refused the check off, the representatives of the union broke off the bargaining and refused to negotiate further though the respondents were willing and proposed to continue conferences.

■■ The law requires good faith bargaining with the purpose of reaching an agreement. It does not require that any particular form of agreement be reached. The respondents did not ask a single thing of the union that it could not, if it wanted to, have agreed to. The same thing is true of the demands the union made upon the respondents. It is not for us to determine whether the proposals of the union or those of the respondents would have been best for employer and employee. It is sufficient for us to determine that respondents have not, in contempt of this court's order, failed and refused to bargain. To sustain this petition and issue a contempt order under this record could mean only one thing, in effect, that the respondents were found in contempt for not agreeing to the check off, because it was upon this rock that the negotiations finally split. It was because of this that the union broke off and refused to continue negotiations. The law does not authorize the Board or us to make collective bargaining contracts nor to prescribe what shall be written in them. Neither we nor the Board can interfere in the negotiations as long as they are in good faith, going on.

■ As to the raises complained of as made in contempt of our order, it is sufficient to say that upon the allegations of the answer, neither of them were in violation or in contempt of our order. The so called October raises, given a few "fixers" were not raises at all, but merely adjustments in pay made necessary by new installations. The February raises were indeed general raises, but they were made two months after the union had broken off negotiations, had advised respondents that it was notifying the Board "that it is our desire that they proceed to enforce the decisions of the court", and after respondents were informed that the Regional Director had made a report to the Board that the respondents had bargained with the union and had recommended that the case be closed, and the respondents had heard nothing to the contrary. They were made too because business conditions not only justified but in fairness to the employees, required respondents to make them, since all through the bargaining respondents had repeatedly stated that as soon as business conditions justified, they intended to and would make raises.

■■ Two collateral matters, presented, one by the petitioner, and one by the respondents, may be briefly disposed of as without merit. The petitioner's insistence that, the failure of the respondents at the suggestion of the Board's representative, to resume negotiations, pending the contempt hearing, was itself conduct in contempt of this court's order, is wholly without substance. There was here not a request by the union to resume negotiations and a refusal by respondents to do so. There was merely in effect a proposition for a tentative settlement on this basis, the respondents should resume bargaining conferences with the union, and if in the opinion of the Board, the respondents bargained in good faith, the contempt proceedings should be dismissed; if in the opinion of the Board, the bargaining was not in good faith, the contempt proceedings would be pressed. The rejection of a proposition for settlement of a contempt proceeding cannot be, it is not, contempt of court.

■ Equally without merit is respondents' complaint of the failure of the Board to furnish it with, and its insistence that the court order the Board to furnish for the record, a copy of the report of the Regional Director, made on or about December 11, 1940, that the respondents had bargained in good faith and his recommendation that the cases be closed. Insofar as the recommendation, that the case be closed, is relied on as a defense or explanation of respondents' conduct in granting the February wage increases, the allegations of the answer, that it was made, must be taken by us as true. Insofar as the report is relied on merely as the opinion of the Director, that the respondents had bargained in good faith and therefore were not in contempt of this court's decree, it is wholly immaterial. Neither the opinion of a representative of the Board nor that of the Board itself, is material on this issue. It must be determined by the court on the proven or admitted facts and not on the opinion of anyone as to the effect of these facts.

No case for contempt is made out. The petition will be denied. The respondents will stand discharged.