STONEWALL COTTON MILLS, Inc., v.
NATIONAL LABOR RELATIONS
BOARD.

No. 10110.

Circuit Court of Appeals, Fifth Circuit.
June 3, 1942.

Rehearing Denied July 6, 1942.

Gabe Jacobson, Edw. L. Snow, and J. A. Covington, Jr., all of Meridian, Miss., for petitioner.

Robert B. Watts, Gen. Counsel, Ernest A. Gross, Associate Gen. Counsel, and Gerhard P. Van Arkel, Asst. Gen. Counsel, National Labor Relations Board, all of Washington, D. C., for respondent.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Ordered, to cease and desist from unfair labor practices,[1] to reinstate three employees[2] found to have been discriminated against in regard to their hire and tenure of employment, to bargain collectively with the union,[3] and to post appropriate notices, petitioner brings this proceeding to set aside or modify the order. The respondent, by answer and cross petition, seeks its enforcement.

While many subordinate and incidental facts are relied on to make them up, there are three ultimate findings on which the orders are based. One is concerned with the discharges in violation of Section 8(3), another with the refusal to bargain in violation of Section 8(5), the third with other acts of interference, restraint and coercion in violation of Section 8(1) of the Act. Fully mindful, of course, that the evidence in the record must be considered as a whole and that

---

[1] (a) By discriminating in regard to the hire and tenure of employment of three employees thereby discouraging membership in the union within the meaning of Section 8 (3) of the National Labor Relations Act, 29 U.S.C.A. § 158 (3) (b) by refusing to bargain collectively with the union, thereby engaging in unfair labor practices within the meaning of Section 8 (5) of the Act; (c) by interfering with, restraining and coercing its employees in the exercise of its rights within the meaning of Section 8 (1) of the Act.

[2] W. A. Taylor, C. A. Holliman, and Hill Logan.

[3] Textile Worker's Federal Local Union No. 21723.

the whole and each piece of it must be given its proper place and weight as it bears upon each and all of the findings, our function is performed when we determine as to each of the findings, whether it is supported by substantial evidence.

■ Respondent and petitioner have fully briefed the law. Each has set the record out as it sees it. As to the law of a case of this kind, the statute is so plain and so much has been written that we need not write at length on it. It is sufficient to say that our function here is to examine the record for ourselves and determine, as we do in a review of cases tried to a jury, where the claim is that the verdict is without support in the evidence, not what findings we think the triers ought, upon the evidence, to have made, but whether the findings they did make are supported by substantial evidence, that is, whether reasonable and unbiased minds could have reached the conclusions and made the findings that were made. If therefore, there is any substantial conflict in the evidence as to any of the facts found by the Board, its findings resolving that conflict are binding on us. Further though the evidence is without conflict, if more than one inference can reasonably be drawn from it, the Board's determination as to the inference to be drawn likewise binds us. Only where there is no substantial conflict in the evidence and only one permissible inference may be drawn from it, when, in short, what the evidence amounts to is a question of law rather than of fact, are we permitted to set aside findings of the Board as without support in the evidence.

■ Examining the record with these considerations in mind, and resolving all the conflicts in the evidence and all permissible conflicting inferences therefrom, in favor of the Board's findings, we think it may not be doubted that there is substantial evidence to support the findings of the Board, (1) that in violation of Section 8(1), petitioner did interfere with its employees in the exercise of the rights guaranteed by Section 7, and (2) that in violation of Section 8, Subdivision (5) it refused to bargain collectively with the representatives of its employees. Anti-union bias is not prohibited by law and therefore is not of itself sufficient proof

of a violation of the rights the law guarantees, but where, as here, there is clear proof of such bias, it may be looked to and considered by the Board for the color and point it gives to speech and action, otherwise equivocal and of doubtful meaning. We must keep in mind too, that as the question of refusal to bargain comes to us here, we have not the problem with which we had to deal in N. L. R. B. v. Whittier Mills Co., 5 Cir., 123 F.2d 725, of determining for ourselves whether the conduct of the company in relation to the bargaining conferences constituted a contempt of and refusal to obey our order, and whether therefore, they should be adjudged in contempt because thereof. Our function here is not to decide what inference we would draw from the facts presented but whether reasonable minds could draw the one the Board did. Examined in the light of these views, we think it perfectly clear that the evidence of what was done and what was not done by the company, both before and in connection with the bargaining efforts, substantially supports the inferences the Board drew, (a) that the anti-union acts of the company's employees in violation of Section 8(1), were the acts of the company, and (b) that the efforts at bargaining were not real efforts but mere shadow boxing to a draw; and that we cannot say they could not have been drawn by reasonable and unbiased minds. We therefore affirm the Board's findings (1) that there was a refusal to bargain, and (2) that there has been interference in violation of Section 8(1), and decree enforcement of its order that petitioner cease and desist therefrom and that it do bargain with the union.

■ When it comes to the layoffs and discharges found to have been in violation of Section 8(3) of the Act,[4] the case stands differently. The courts have pointed out so often that it need not be elaborated here that though the fact of union activity or office in the union is a fact to be considered by the Board in connection with other facts bearing upon the issue, the affirmative of which is on the Board as accuser to establish before itself as trier, Magnolia Petroleum Co. v. N. L. R. B., 5 Cir., 112 F.2d 545; N. L. R. B. v. Riverside Mfg. Co., 5 Cir., 119 F.2d 302,

---

4 "It shall be an unfair labor practice for an employer * * (3) By discrimination in regard to hire. or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization."

307; N. L. R. B. v. Tex-O-Kan, 5 Cir., 122 F.2d 433; N. L. R. B. v. Union Mfg. Co., 5 Cir., 124 F.2d 332, the invoked section does not, of course, mean that membership or office in a union is a guarantee against discharge, layoff or demotion. An employee, though he belongs to or is an officer of a union, may, like any other employee, be discharged for any reason or for no reason at all, unless it is for a reason prohibited by the Act. It must be borne in mind that this charge is not sustained by evidence and a finding merely that persons were discharged because of their union activity. To make out a case under it, it must appear that an employer has by discrimination in regard to hire, etc., encouraged or discouraged membership in any labor organization. This requires proof of both the purpose and effect of the action under review. N. L. R. B. v. Air Associates, 2 Cir., 121 F.2d 586, at page 592.

As to Taylor, if the issue here were that antipathy to him because of his union activities was the moving reason for his discharge, it might, though the testimony of Richardson who laid him off was "that he did not lay off Taylor for union activity and that he did not know that Taylor belonged to the union but that he had to lay off one of the roving haulers and the two kept were faster men and better workers than Taylor", and there was abundant evidence in support of it, be said that the Board's finding should be sustained, for the evidence as to the time of his layoff, the statements made to and about him before it occurred and the fact of his activity in the union, might well, in connection with respondent's anti-union bias, be held sufficient to justify a reasonable and unbiased inference that contrary to the claim of the company, he was laid off because of antipathy against him because of his union activities. There is not a shred of evidence however that his laying off had any effect whatever to discourage membership in a union and there is positive evidence that his brother, a member of the union, his daughter, his son-in-law, and his daughter-in-law, all continued to work at the mill.

As to Holliman, we think it clear that reasonable and unbiased minds could not upon the undisputed evidence in the record, showing that he was discharged because of a row he had over his pay, legally draw the conclusion either that he was discharged to discourage or that his discharge did discourage membership in the union. Fully supporting respondent's version of the matter, Holliman himself testified, "I disremember what all he said to me but I lost my temper completely." On the issue of the effect of the discharge there is no evidence whatever that any person left the union or was discouraged in belonging to it or was in any manner influenced by the discharge. Holliman himself admits that his wife, his brother and other relatives are still working at the mill. Logan's case is still less supported. The Board in its brief, points to no fact evidencing, or pointing to, a purpose to discharge Logan for union activity. It bases its finding entirely upon the fact that he was elected vice-president of the union in 1939, and participated in the bargaining conference on January 8, 1940. He was discharged on January 25, 1940, upon the undisputed testimony of Privett, Logan's overseer that though he had a high respect for Logan and he had always been a good man, he had been irregular in his attendance and the cards in the mill where he worked were not in a satisfactory condition, and that he would have put Logan back to work if Logan had assured him of future regularity in his attendance.

But if we assume that the action, with regard to Logan, evinced a purpose to discourage union membership, there is no evidence whatever that it had any such effect. The record shows that there is no claim that any other union has gotten or is trying to get a foothold in the plant, or that the complaining union has in any wise lost any part of its clear majority or of its influence in the plant. In view of the fact that the Board functions at once as accuser and judge, it cannot be too often or too clearly repeated that just as the act does not permit an employer to interfere with the self-organization of its employees, neither does it authorize the Board to interfere with the management of the company or with the legitimate hiring or firing of employees. It must too be always kept in mind that the burden was on the Board as accuser, under Section 8(3), in order to establish the facts authorizing itself as judge to find that persons were laid off in violation of it and to require their reinstatement, to show not that they were laid off without sufficient excuse, or even that they were laid off because of antipathy against them because of their union activity, but that their laying off was, the

unfair labor practices denounced by Section 8(3), "by discrimination, etc., to encourage or discourage membership in a union." That same burden is on it here when as petitioner seeking enforcement of its order, it seeks to point out to us that its findings as judge, that this was established, are supported by substantial evidence.

We hold therefore that the order of the Board, except that part of it requiring the reinstatement with back pay of Taylor, Holliman, and Logan, be not set aside but enforced, and that that part of it which requires their reinstatement be not enforced but set aside.

### On Motion for Rehearing.

 Respondent, in its motion for rehearing, insists that there was error in the holding of our opinion, that the Board's finding that the discharge of Taylor had the effect of discouraging membership in the union, was without support in the evidence. We agree.

The opinion will therefore be modified; by withdrawing the last sentence on page 5 as to Taylor and re-writing it so that it will read as follows: "Too, while there is not a shred of positive evidence that his laying off was for the purpose or had the effect of discouraging membership in a union, and there is positive evidence that his brother, a member of the union, his daughter, his son-in-law and his daughter-in-law, all continued to work at the mill, we cannot say that the Board's inference that his discharge had the effect of discouraging union activity is unsupported"; and by striking Taylor's name from the last paragraph of the opinion. The motion for rehearing will accordingly be granted as to Taylor's discharge and the Board's order will be enforced as to him.

It insists too that we erred in holding that there is no evidence that the discharges of Holliman and Logan had the effect of discouraging membership in the union. Again we agree. The opinion will therefore be modified as to Holliman and

Logan; by withdrawing the first two sentences at the bottom of page 5 and re-writing them to read as follows: "As to Holliman, we think it clear that reasonable and unbiased minds could not upon the undisputed evidence in the record, showing that he was discharged because of a row he had over his pay, legally draw the conclusion that he was discharged to discourage membership in the union. Fully supporting respondent's version of the matter, Holliman himself testified, 'I disremember what all he said to me but I lost my temper completely.'"; and by withdrawing the first two sentences at the top,[5] and the first two of the second paragraph,[6] of page 6.

Finally, it insists that we erred in holding that the evidence does not support the Board's finding that Holliman and Logan were discharged not for cause but to discourage membership in the union.

We do not agree.

The motion for rehearing as to Holliman and Logan is therefore, denied.

---

[5] "On the issue of the effect of the discharge there is no evidence whatever that any person left the union or was discouraged in belonging to it or was in any manner influenced by the discharge. Holliman himself admits that his wife, his brother and other relatives are still working at the mill."

[6] "But if we assume that the action, with regard to Logan evinced a purpose to discourage union membership, there is no evidence whatever that it had any such effect. The record shows that there is no claim that any other union has gotten or is trying to get a foothold in the plant, or that the complaining union has in any wise lost any part of its clear majority or of its influence in the plant."