## OKLAHOMA TRANSP. CO. v. NATIONAL LABOR RELATIONS BOARD.

### No. 10563.

Circuit Court of Appeals, Fifth Circuit.

June 4, 1943.

Karl H. Mueller, of Fort Worth, Texas, for petitioner.

Robert B. Watts, Gen. Counsel, National Labor Relations Board, Ernest A. Gross, Associate Gen. Counsel, N. L. R. B., and Colonel C. Sawyer, Atty., N. L. R. B., all of Washington, D. C., for respondent.

Before HUTCHESON and WALLER, Circuit Judges, and COX, District Judge.

HUTCHESON, Circuit Judge.

Ordered (1) to cease and desist from discouraging membership in the Brotherhood of Railroad Trainmen or any other labor organization, (2) to offer Fitzgerald and Lang reinstatement and make them whole for lost earnings, and (3) to remove from the work record of Morris 25 demerits, petitioner seeks to have the order vacated and set aside. The Board answering, seeks enforcement of the order.

Petitioner does not concede that the evidence supports the cease and desist orders of the Board. On the contrary, it insists that the evidence on which the Board relies for its finding that Petitioner discouraged membership in the Brotherhood of Railroad Trainmen and otherwise interfered with its employees in the exercise of their right to self organization is not sufficient to support it. It particularly takes issue with the Board's finding that the notice to the men which the company caused to be posted on the bulletin board constituted a violation of the act, and it denies any complicity with or responsibility for the anti-racketeering editorial which was found posted there. The weight of its attack, however, is centered on the findings and order as to the

discharges of Fitzgerald and Lang, and the demerits imposed upon Morris.

Whether the notice was within the right of free speech which belongs to the employer as well as to the employees, or whether the petitioner was responsible for the posting of the editorial, we will not undertake here to determine. For it may not be gainsaid that there is sufficient other evidence to support the Board's findings, (1) that there was strong opposition to the Brotherhood of Railroad Trainmen and to employees of the company joining it, and (2) that there was interference with their right of self representation, and its cease and desist orders based on those findings.

As to the discharges, Petitioner points to the established fact as to Lang, that he had been having trouble with his run and that he had been warned that he must make an exchange of runs within a time fixed or he would have to be let out, and as to Fitzgerald, that he had held out company money and had been warned that if it occurred again he would be let out. It insists that the finding that these men were discharged because of their union activity and in order to discourage organizational efforts, is, within the holding of cited authorities[1] wholly unsupported by the evidence.

As to Morris, Petitioner insists that the findings and order are wholly arbitrary because the undisputed proof shows that Morris, in violation of rules which subjected the company to penalties, had used a bus on a route where it was not permitted to run, and that, offered the opportunity to pay $11.50, the fine his act had charged the company with, Morris declined to pay the fine, though he was told that he must either pay the fine or take the demerits.

The Board, on its part, insists that while Fitzgerald and Lang were discharged for assigned causes, the causes were but pretexts put forward for the purpose of getting rid of the two men most active in bringing about the unionization of the employees. As to Morris, who was also active in the movement, the Board insists: that though he did violate the company's rule and thereby did subject the company to a loss, and though he was offered the opportunity to pay the loss rather than take the demerits, the evidence viewed as a whole permits the deduction that this was but a pretext for imposing the demerits. It, therefore, found that they were imposed as part of a device to get rid of him by loading him down with demerits so that upon the next excuse they could increase the demerits to the point where he would have to leave.

We, and other courts, recognize and have said that where a discharge was for cause, the fact that the person discharged was a member of a union or active in organizing one could not prevent his discharge or secure his reinstatement. We, and they, have said too that the mere fact that a person was active in union affairs would not support a finding that he was discharged for that activity when the evidence showed a real cause and that cause was assigned. All of those holdings, however, were made not as unfailing generalizations but upon their particular facts. They were not stated as unvarying principles of law, and they may not be applied here to the cases of Fitzgerald and Lang, for the long and in the main satisfactory service of these two men, their active espousal of the unionization program, and their immediate discharge in January when the movement was getting under way, are potent facts and circumstances which, considered in connection with the grounds assigned for their discharge prevent the holding as a matter of law that no reasonable mind could conclude, that the grounds assigned for discharge were mere pretexts, that the real grounds were to discourage union activity. The record makes it clear as to both of these men that they had begun their activities in November, and that it was known to the company in January when these discharges were made effective that they were organizers of the union. Reasonable minds might well conclude that Fitzgerald's temporary borrowing of a small amount from expense money before he made out his report, while wrong, was not such a wrong as would have been found inexcusable if it had not been for his union activities. They might well conclude, too, that Lang would have been given further time to exchange his run except for the same activity.

As to Morris, the matter stands differently. To the finding that the de-

[1] N. L. R. B. v. Riverside Mfg. Co., 5 Cir., 119 F.2d 302; N. L. R. B. v. Tex-O-Kan. Co., 5 Cir., 122 F.2d 433; N. L. R. B. v. Goodyear, 5 Cir., 129 F.2d 661; N. L. R. B. v. Williamson-Dickie, 5 Cir., 130 F.2d 260; Stonewall Cotton Mills v. N. L. R. B., 5 Cir., 129 F.2d 629; N. L. R. B. v. Times-Picayune, 5 Cir., 130 F. 2d 257.

merits were imposed on him discriminatorily in violation of Section 8 (3), National Labor Relations Act, 29 U.S.C.A. § 158(3), quite clearly is without support in the evidence. If Morris had been discharged outright and without any option afforded him, and the Board had found that the penalty imposed at the time and under the circumstances, (Morris having conferred with the president about forming the union and having been told by him that the company could not live if forced to unionize,) there might be some basis on which the order could stand. But this is not the way the matter occurred. In the first place, he was not discharged at all. He was merely given demerits, and, as we have so often pointed out, it is for the employer and not for the Board to say just what penalty should follow the offense with which he was charged. In the second place, and this is more important, instead of peremptorily discharging or peremptorily imposing the demerits on Morris, Petitioner, telling him that if he did not pay the $11.50, he would have to take 25 demerits, gave him an option, and Morris with the choice presented took the demerits. In these circumstances, it is merely fiating and not finding to say that the imposition of the demerits was done discriminatorily for the purpose of discouraging membership in a labor organization.

The order of the Board will, therefore, be enforced except as to Morris, and the petition except as to Morris to set aside the order will, therefore, be denied.