**NATIONAL LABOR RELATIONS
BOARD**

v.

**LATE CHEVROLET CO., Inc.**

No. 14955.

United States Court of Appeals
Eighth Circuit.

April 15, 1954.

Melvin Spaeth, Atty., National Labor Relations Board, Washington, D. C. (George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, and Louis Schwartz, Atty., National Labor Relations Board, Washington, D. C., were with him on the brief), for petitioner.

Courtney C. Crouch, Springdale, Ark., and Rex W. Perkins, Fayetteville, Ark. (Billy L. Blair, Springdale, Ark., was with them on the brief), for respondent.

Before GARDNER, Chief Judge, and JOHNSEN and COLLET, Circuit Judges.

GARDNER, Chief Judge.

This matter is before us on petition of the National Labor Relations Board to enforce its order directing the Late Chevrolet Company, Inc. to cease and desist from certain unfair labor practices and to reinstate and make whole certain employees wrongfully discharged.

On the 13th day of January, 1953, the National Labor Relations Board filed complaint against respondent alleging that respondent had been and was indulging in certain unfair labor practices. The complaint charged that respondent was guilty of engaging in unfair labor practices by interrogating employees as to their union affiliations, interrogating employees as to their feelings concerning the union, threatening employees that the shop would be closed down if it went union and threatening employees that they would be fired if they joined the union; that respondent discriminatorily discharged its employees Hershel Van Owen, James F. Cook and Jay Bowen and refused on request to reinstate them because of their union activities and affiliations.

On the issues joined a hearing was had before an examiner of the Board who found against respondent on all issues and recommended that a cease and desist order enter against respondent requiring that it cease and desist from the unfair labor practices of which the examiner found it to be guilty and requiring respondent to offer to reinstate Cook, Owen and Bowen to their former or substantially equivalent positions without prejudice to their seniority or other rights and privileges and to make said employees whole for any loss of pay they may have suffered by reason of respondent's discrimination against them.

The Board approved and adopted the findings of the examiner and following his recommendation entered the cease and desist order which it now asks to have enforced and affirmatively ordered that respondent reinstate with back pay the discharged employees as recommended by the examiner in his report.

Respondent resists enforcement of the order on the general ground that the findings on which the order is based are not sustained by substantial evidence on the record considered as a whole.

In May, 1952, there was a movement on foot to unionize respondent's employees. Union authorization cards were signed by Cook, Owen and Bowen, all mechanics, and by another employee, Barens. Cook collected the signed cards and turned them in to the union. On June 7, 1952, the union sent a letter to respondent stating that the union represented a majority of the employees and requesting recognition as bargaining agent. Following the receipt of this notice John Late, Sr., who was president of respondent and controlled and dominated its business methods and transactions, at various occasions interviewed individually its employees. In a conversation with Mr. Cook he asked, "Have you ever belonged to the union?" and on being advised that Cook had, stated, "Well, if you belonged to the union I don't want you or anybody else that has." Immediately following this conversation Mr. Late stepped into the shop and in the presence of the other employees said, "I will never have anybody that works for that durned old union in my shop." On the morning of June 15, 1952, Late inquired of Owen, "I want to know how you feel about this union. What do you think about it in the shop?" Owen answered, "I think it would be fine in the shop." Late then stated, "The darned old union will cause you nothing but trouble and lose you your wages. * * If you boys join the union I will have to close the shop down and you boys will lose your wages." To another employee he said, "Before I go union I will close the blamed door." There were other similar statements made to the employees. These statements went far beyond the bounds of legitimate argument and constituted, we think, threats of reprisal, and the findings of the Board on this phase of the case are sustained by unimpeached and uncontradicted evi-

dence. National Labor Relations Board v. Cold Spring Granite Co., 8 Cir., 208 F.2d 163.

 The question as to whether the discharges of employees Cook, Owen and Bowen were because of their union activities or affiliations presents under the evidence a more serious question. These men had all quit their jobs at noon on Saturday. The usage and practice of the shop was that the employees worked Saturday afternoons. When they returned to resume work on the following Monday they were discharged. It is contended by respondent that they were discharged because they had quit their jobs without permission. If the employees quit their jobs under these circumstances without permission this would furnish a legitimate reason for their discharge. It is admitted that the authority to excuse the employees was exercised by the senior Late and there is no claim that permission to leave the employment on this occasion was asked of Late, Sr. The question which the Board had jurisdiction to consider was whether these discharges were because of the union activities or affiliations of these employees. The Board would not concern itself with the question of whether the discharges were just or unjust as the management of respondent's business could not be interfered with by the Board. American Smelting & Refining Co. v. National Labor Relations Board, 8 Cir., 126 F.2d 680; National Labor Relations Board v. Montgomery Ward & Co., 8 Cir., 157 F.2d 486; Farmers Co-operative Co. v. National Labor Relations Board, 8 Cir., 208 F.2d 296; Local No. 3, United Packinghouse Workers of America, CIO v. National Labor Relations Board and Wilson & Co., Inc., 8 Cir., 210 F.2d 325; Montgomery Ward & Co. v. National Labor Relations Board, 7 Cir., 107 F.2d 555; Stonewall Cotton Mills, Inc. v. National Labor Relations Board, 5 Cir., 129 F.2d 629; National Labor Relations Board v. Citizen-News Co., 9 Cir., 134 F.2d 970. There was evidence that one of these employees asked for leave of absence for the four union employees. This permission was sought from John Late, Jr., who confessedly did not have the responsibility of hiring or firing any employees and who denied that such request was made of him. It was incumbent upon the Board to prove that the discharges were prompted by the union activities or affiliations of the discharged employees. National Labor Relations Board v. Falls City Creamery Co., 8 Cir., 207 F.2d 820; Local No. 3, United Packinghouse Workers of America, CIO v. National Labor Relations Board and Wilson & Co., Inc., supra; National Labor Relations Board v. Reynolds International Pen Co., 7 Cir., 162 F.2d 680; National Labor Relations Board v. National Die Casting Co., 7 Cir., 207 F.2d 344; American Smelting & Refining Co. v. National Labor Relations Board, supra. As said by us in Local No. 3, United Packinghouse Workers of America, CIO v. National Labor Relations Board and Wilson & Co., Inc., supra [210 F.2d 329]:

"The question of the right to reinstatement or re-employment depends on whether or not the employee was discharged or refused reinstatement for his union activities. If an employee has been discharged or refused reinstatement for other causes, whether justly or unjustly, he is not entitled to reinstatement by order of the Board. In other words, the Act does not confer upon the employee any right of reinstatement if he has been discharged or refused reinstatement for any reason other than his union activities or affiliations. It is therefore of paramount importance in this, as in other similar cases, to consider the entire record for the purpose of determining whether the finding that the discharges or refusals to reinstate the employees involved were prompted by their union activities or affiliations is sustained by substantial evidence."

 We have searched the record and are unable to find any evidence that Mr. Late, Sr. knew at the time he dis-

charged these employees that there was any claim that they had received permission from Late, Jr. to lay off for the Saturday afternoon in question. The services of these employees were normally required on Saturday afternoons. If their absences were without permission, leaving their jobs clearly constituted such a violation of duty as warranted their discharge. As was said in National Labor Relations Board v. Falls City Creamery Co., supra [207 F.2d 829]:

> "The fact that they were discharged at that time is as consistent with their discharge for cause as it is consistent with their discharge for union affiliation, if we consider, as we must, all of the evidence in the record."

In the instant case it should be observed that the employee Barens was a member of the union, equally active in union matters as were the discharged employees. He, however, did not quit his job and he was not discharged. The evidence must do more than create a mere suspicion. As said by the court in National Labor Relations Board v. Citizen-News Co., supra [134 F.2d 973]:

> "The right to terminate a contract of employment is a constitutional right of the utmost importance. The mere discharge of an employee with or without reason is therefore not evidence of intent to affect labor unions or the rights of employees under the National Labor Relations Act. * * * Circumstances that merely raise the suspicion that an employer may be activated by unlawful motives are not sufficiently substantial to support a finding."

We conclude that there is no substantial evidence sustaining the Board's finding that the named employees were discharged because of their union activities or affiliations.

The order of the Board will therefore be modified by striking therefrom that part of the order which requires respondent to offer Cook, Owen and Bowen re-

instatement and to make them whole. The notice required to be given will be correspondingly modified. As so modified the order of the Board will be enforced.