**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**GALA–MO ARTS, Inc., Respondent.**

**No. 15453.**

United States Court of Appeals
Eighth Circuit.

April 26, 1956.

James A. Ryan, Attorney, National Labor Relations Board (Theophil C. Kammholz, General Counsel, David P. Findling, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Arnold Ordman, Attorney, National Labor Relations Board, on the brief), for petitioner.

Richard F. Moll, St. Louis, Mo. (Robert C. Johnson, University, Mo., and Robert A. Dempster, Sikeston, Mo., on the brief), for respondent.

Before GARDNER, Chief Judge, and WOODROUGH and VAN OOSTERHOUT, Circuit Judges.

GARDNER, Chief Judge.

This matter is before us on petition of the National Labor Relations Board to enforce its order directing Gala-Mo Arts, Inc. to cease and desist from certain alleged unfair labor practices and to reinstate and make whole one Dee Uthoff an employee allegedly improperly discharged.

Respondent, a Missouri corporation, was organized in 1952 and was at all times pertinent engaged in the production of ceramic products at Sikeston, Missouri. It began business in 1952 and at the time of the hearing employed some forty to forty-five workmen. On January 28, 1953 an election was held for the purpose of determining whether the Feder-

ation of Glass, Ceramic and Silica Sand Workers of America, CIO, Local 157, represented a majority of the employees for collective bargaining purposes. A majority of the vote cast favored the union and it was in due course designated as the bargaining representative for respondent's employees. Following the designation of the union as the authorized representative of respondent's employees for collective bargaining purposes negotiations were begun with respondent's management with a view to agreeing upon a contract but no contract had in fact been agreed upon at the time of the alleged violations of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq.

Pending these negotiations between the representatives of the union and the management, William E. Helms, president of the union, made verbal complaint to Norvill A. Tindall, foreman of respondent's casting department, that the work was being unfairly distributed in the casting department. As the result of this incident Tindall called C. E. Golladay, president of respondent. At this conference C. E. Golladay inquired of Helms what the trouble was, to which inquiry Helms answered that Tindall was unfit to act as foreman and that if Tindall and another foreman, Clarence Mandrell, were not fired the men would walk out. Confronted with this threat Mr. Golladay said he would have to have time to think the matter over and that he would let Helms know by ten o'clock that morning. On advice of counsel Mr. Golladay invited Reverend Madron G. Joyce, who was a Methodist minister, to attend the proposed conference and at the hour designated Mr. Helms and Mr. James Adcock, president and vice-president respectively of the union, appeared and met with Mr. Robert A. Dempster, respondent's attorney, Reverend Joyce, Mr. C. E. Golladay and B. L. Golladay. There was a sharp conflict in the evidence as to what was said, particularly by Helms, at that conference. At the hearing Helms testified that he had not demanded that the foremen be fired and

that he had been fired. On the other hand, Reverend Joyce testified that Helms had demanded the discharge of the two foremen under threat of a walkout and that nothing was said about discharging Helms. The trial examiner and the Board discredited Helms' testimony as to what was said, particularly by him, and accepted the testimony of Reverend Joyce. At this conference in response to an inquiry as to what the trouble was Helms stated that Tindall and Mandrell were unfair and abusive, that Tindall was incapable of being a foreman and that Mandrell was too young to be a foreman. Helms declared that if the two foremen were not fired the men were walking out. Helms and Adcock were then asked to leave the meeting for a few minutes and they did so. Tindall was called in and questioned about the charges. Tindall was excused from the meeting and Helms and Adcock were recalled. Upon their return Helms and Adcock were told that the company was satisfied with the work and conduct of the two foremen and that the company was unwilling to discharge them. Helms thereupon announced that the men were walking out.

Of the approximately forty-three employees thirteen, including Helms, walked out and at noontime on October 1, 1953 the union established picket lines at the entrances to respondent's plant. Following this walkout, on the afternoon of October 1 the company called persons who had previously applied and others whom they knew wanted jobs to replace the thirteen striking employees and by the end of the afternoon of October 1 all of the vacancies had been filled. Some of the new employees reported and began work the same afternoon and the others reported and began work the morning of October 2.

The proceeding culminating in the Board's order was initiated October 19, 1953 by the filing of charges by the union alleging certain unfair labor practices on behalf of respondent. Based on these charges the Board, on December 4, 1953, filed formal complaint and there-

after on December 29, 1953 filed its amended complaint. The respondent filed answer to this amended complaint and on the issues joined hearing was begun January 3, 1954. In substance, so far as here pertinent, the amended complaint charged that respondent had discriminatorily discharged Helms on October 1 and had discriminatorily discharged the other strikers on October 2, 1953. It also charged that the company had discriminatorily discharged Dee Uthoff on September 4, 1953, and there were other charges of interference and violations of the Act.

The issues were heard before a trial examiner who on June 15, 1954 filed an extended report and recommendations. He found, inter alia, that ten of the fourteen employees named in the amended complaint had been discriminatorily refused reinstatement after having gone on strike but that respondent had not discriminated against four others named in the amended complaint though respondent was guilty of the unfair labor practices as charged in the amended complaint and he recommended that the Board enter its order requiring respondent to reinstate and make whole the ten named employees improperly refused reinstatement and to cease and desist from engaging in the unfair labor practices charged in the complaint.

On the filing of the intermediate report by the trial examiner the respondent filed exceptions thereto. On consideration of the exceptions so filed and on consideration of the entire record the Board entered findings drastically modifying the findings of the trial examiner's intermediate report, and on the decision and findings so made and entered, entered its order which it now seeks to have enforced. The Board found that none of respondent's employees save Uthoff had been discriminatorily discharged or improperly refused reinstatement but it in effect adopted the examiner's findings with reference to the other alleged unfair labor practices.

In resisting enforcement of the Board's order respondent in effect contends: (1) That the Board's order and findings of fact are not supported by the preponderance of the evidence and are not supported by substantial evidence on the record as a whole. (2) That the Board's order and findings of fact regarding Dee Uthoff are not supported by the preponderance of the evidence and are not supported by substantial evidence on the record as a whole, and (3) That the Board's denial of respondent's motion to make the complaint more definite and certain and motion to take depositions, deprived respondent of due notice and process as guaranteed by the Constitution of the United States, and particularly the Fifth Amendment thereto.

The Board in effect concurred in, approved and adopted the findings of the trial examiner that respondent interfered with, restrained and coerced its employees by denying William E. Helms, the union president, the right to speak on behalf of the other casters; by ordering him to get his check and get out for that reason; by threatening employees with reprisal because they had gone on strike or because of their union activities; by interrogating employee Uthoff concerning his union activities and by discriminatorily discharging Uthoff. These findings of the Board are vigorously assailed by respondent as not being sustained by substantial credible evidence. So far as the alleged refusal of respondent to recognize Helms' right to speak on behalf of the other casters, we think the evidence including the surrounding circumstances does not sustain this finding. It is dependent to a large extent upon the testimony of Helms and both the trial examiner and the Board have in effect disbelieved the testimony of this witness in respect to another material issue, and without going into detail, on the entire record we believe his testimony in this regard unworthy of belief. The Board did not hear the testimony of this witness. It is true the examiner heard him but the examiner, when his testimony was in direct conflict with that of Reverend Joyce, found that the testimony of Reverend Joyce was

true and by necessary implication that the testimony of Helms was false. If false it was knowingly false, and being proven to be false his further testimony in connection with the same matter, unless corroborated by other credible testimony, should not have been accepted as the basis of this finding. He in fact continued to speak for and represent the employees and instead of being discharged he walked out on strike with the other employees. Touching this incident the trial examiner in his report said:

" * * * on October 1 at about 9 A.M., C. E. Golladay told Helms that he had no right to talk for the other casters, and directed him to get his check and get out. The General Counsel contends that this constituted a discharge of Helms for engaging in concerted activities. Had Golladay followed through with his direction to Helms to get his check and get out, there would undoubtedly be considerable merit in the General Counsel's contention. But almost immediately, being informed that Helms' discharge would precipitate a strike by the other casters, Golladay said: 'Well, I will let you know in a few minutes.' While this remark did not rescind Helms' discharge then and there, it did indicate that instead of enforcing the discharge immediately Golladay would hold it in abeyance and give it further consideration and announce his final decision later. Thereafter, Helms did not go to the office and get his check, nor did he leave the plant. Furthermore, nothing was said to Helms in the meeting at 10 A.M. attended by Dempster which amounted to a discharge. I conclude that Helms had not been effectively discharged and was still an employee on October 1 when the strike began."

The rule with reference to the review of findings of the Board is now, we believe, established by what is said by the Supreme Court in Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 464, 95 L.Ed. 456. It is our duty to consider not only the evidence tending to support the Board's findings but also the evidence conflicting therewith. In the Universal Camera case, supra, the court in referring to this question said:

"Whether or not it was ever permissible for courts to determine the substantiality of evidence supporting a Labor Board decision merely on the basis of evidence which in and of itself justified it, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn, the new legislation definitely precludes such a theory of review and bars its practice. The substantiality of evidence must take into account whatever in the record fairly detracts from its weight. This is clearly the significance of the requirement in both statutes that courts consider the whole record."

In Local No. 3, United Packinghouse Workers of America, C. I. O. v. National Labor Relations Board, 8 Cir., 210 F. 2d 325, 330, we among other things said:

"Since the decision of the Supreme Court in Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 464, 95 L.Ed. 456, it is incumbent upon this court in cases here on petition for review of an order of the National Labor Relations Board to consider the conflicting evidence and if it is our duty to consider it then we must pass upon its weight."

Without going into detail as to the conflict of evidence on this question we think on the record as a whole the finding on this particular charge of unfair labor practice is not sustained by substantial evidence.

As has been observed the Board sustained the examiner's finding to the effect that Dee Uthoff was discriminatorily discharged because of his union activities in violation of Sections 8(a) (3) and (1) of the Act. Unlike the situation

in National Labor Relations Board v. Late Chevrolet Co., 8 Cir., 211 F.2d 653, cited and relied on by petitioner, there was not at the time in question any campaign for unionizing the employees. The employees had not only been unionized but an election conclusively established that a majority of the employees were members of the union and it had been designated as the representative of the employees for collective bargaining purposes. So far as Uthoff is concerned we have searched the entire record and find absolutely no evidence of any union activity by him except that he had signed an application card for membership in the union. So far as direct testimony was concerned it was without dispute that Uthoff's layoff was because respondent was caught up on its work in the packing department and that this was the usual practice. This was established by two witnesses called by the Board. As a circumstance supporting the finding that he was laid off because of his union activities and not because respondent was caught up on its work it is pointed out that in the two weeks following his discharge the respondent's shipping department spent a total of twenty-one and eighteen and one-half hours respectively in overtime work. Answering this argument Board member Philip Ray Rodgers in a dissenting opinion says:

"But these facts which the majority concedes to be 'a factor to be considered in determining whether respondent's stated reason for Dee Uthoff's discharge was a true one' serve, in my opinion, only to confirm the validity of the respondent's position in this case, for the small amount of overtime work involved, amounting to little more than one day's work a week for 2 employees, can scarcely be viewed as requiring the full-time services of 2 additional employees for the entire two-week period relied upon by the Trial Examiner. This Board certainly has no authority to require that an employer retain unneeded workers to establish the purity of his motives."

It is further argued that an employee named Moore should have been laid off first, rather than Uthoff, because of Uthoff's seniority. True, Moore was hired about a week later than Uthoff but he had been previously employed at respondent's plant prior to entering the military service and the Selective Service Act, 50 U.S.C.A.Appendix, § 451 et seq., protected Moore's seniority rights while he was in the Armed Services. Another reason occurs to us why respondent did not recall Uthoff. When he was advised that he had been laid off because the work in his department was caught up he was apparently displeased and said he thought he was working for some pretty nice people but, "If you are that kind of people, I don't want to work for you anyway." This was in the nature of a declaration that he had, or intended, permanently to sever his connection with respondent. As observed by Board member Rodgers in his dissenting opinion:

"The foregoing, since it has not been discredited by either the Trial Examiner or the majority, well serves in my opinion to 'explain' why the respondent did not thereafter recall Dee Uthoff."

We conclude that the finding of the Board that Uthoff was discriminatorily discharged and wrongfully refused reinstatement is not sustained by substantial evidence and that the order requiring his reinstatement and that he be made whole for any loss of pay he may have suffered by reason of respondent's alleged discrimination against him, will not be enforced.

It is finally argued that the respondent was denied a fair trial because of the refusal of the Board to grant respondent's motion to make the complaint more definite and certain and the denial of its motion to take depositions. These motions were addressed to the discretion of the Board and as no prejudice has been clearly shown by reason of the denial of these motions we cannot say that the Board abused its discretion.

The order of the Board will therefore be modified by striking therefrom item 1(a) of the order which provides:

"Discouraging membership in Local 157 of the Federation of Glass, Ceramic and Silica Sand Workers of America, C.I.O., or any other labor organization, by discharging any of its employees, or discriminating in regard to their hire, tenure of employment, or any term or condition of employment;"

and that part of the order which requires respondent to offer Dee Uthoff reinstatement and to make him whole. The notice required to be given will be correspondingly modified. As so modified the order of the Board will be enforced.