GEM INTERNATIONAL, INC., et al.,
Petitioners,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

RETAIL STORE EMPLOYEES UNION,
LOCAL 655, etc., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

Nos. 17125, 17126.

United States Court of Appeals
Eighth Circuit.

Aug. 9, 1963.

S. G. Lippman, Washington, D. C., made argument for petitioner Local 655, Retail Store Employees Union; Russell Specter, Washington, D. C., and John H. Martin, St. Louis, Mo., were with him on the brief.

Robert B. Vining, St. Louis, Mo., made argument for the petitioners Gem International, Inc., and others and filed their brief.

Marion Griffin, Atty., N. L. R. B., Washington, D. C., made argument for the respondent; Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel and Marcel Mallet-Prevost, Asst. Gen. Counsel of the N. L. R. B., were with her on the brief.

Before VOGEL, VAN OOSTERHOUT and RIDGE, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This case is before us upon the petitions of Gem International, Inc.,[1] and of Local 655[2] to review and set aside a decision and order of the National Labor Relations Board against petitioners and on the Board's cross-petitions for enforcement pursuant to § 10(e) and (f) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 151 et seq.[3] The Board's jurisdiction and the court's appellate jurisdiction are established.

The complaint based upon unfair labor practice charges filed by Local 770[4] asserts that Gem violated § 8(a) (1), (2)

and (3), and that Local 655 violated § 8(b) (1) (A) and (2).

The trial examiner, after hearing evidence, filed a report finding no violation of the Act and recommending dismissal of the complaint. The Board, contrary to the examiner, upheld the complaint, found Gem and Local 655 guilty of the unfair labor practices charged, and ordered them to cease and desist from such practices. It further ordered Gem to cease giving effect to a bargaining agreement entered into between Gem and Local 655 on September 8, 1961, and to cease recognizing Local 655 as the bargaining agent for the employees, and it ordered Gem and Local 655 jointly and severally to reimburse employees for all dues and fees paid the union after September 8, 1961. The decision and order of the Board and the report of the trial examiner, which set out the facts quite fully and the basis for the conclusions reached, are reported in 137 N.L.R.B. 1343.

Petitioners contend that there is no substantial evidentiary support for the Board's determination that the petitioners were guilty of the unfair labor practices charged.

Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, is the landmark case dealing with the scope of review of Board decisions. The legislative changes in the Act and the history thereof were discussed, and the statutory change which requires courts on review to determine the substantiality of the evidence "upon the record considered as a whole" was held to place more responsibility upon the courts of appeal in determining the reasonableness and fairness of the Board's decision. Among other things, the Court states:

"The Board's findings are entitled to respect; but they must nonetheless be set aside when the record be-

1. Charges were filed against Gem and 3 of its subsidiaries but for our purposes we will treat them collectively as a single party.

2. Retail Store Employees Union, Retail Clerks International Association, AFL-CIO.

3. Statutory references herein are to such Act unless otherwise indicated.

4. Retail and Department Store Employees Union, Amalgamated Clothing Workers of America, AFL-CIO.

fore a Court of Appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both." 340 U.S. 490, 71 S.Ct. 465.

The Court in that case also held that the examiner's report is part of the record and must be given consideration, and that the significance of such report depends largely upon the importance of credibility findings. We have recognized the broader responsibility placed upon the courts in reviewing the Board's decisions by the statutory changes as interpreted by Universal Camera. Osceola County Co-op. Creamery Ass'n v. NLRB, 8 Cir., 251 F.2d 62, 64; NLRB v. Gala-Mo Arts, Inc., 8 Cir., 232 F.2d 102, 105; Local No. 3, United Packinghouse Workers of America, CIO v. NLRB, 8 Cir., 210 F.2d 325, 330.

The gist of the complaint and the basis of the Board's decision is that Gem (1) encouraged its employees to sign authorization cards in favor of Local 655 and (2) discriminatorily denied Local 770 organization rights which it accorded to Local 655.

We shall not attempt to detail all facts but will briefly summarize the basic facts. Gem operates retail department stores of a type known in the trade as closed-door membership stores. The right to shop in such stores is limited to members. Presentation of a membership card is required to gain admittance. The present controversy arose in connection with the Northway and Southway stores operated by Gem in St. Louis. Before August 1961 it was the management's uniform policy to prohibit solicitation (except by nonprofit charitable organizations) on the premises.

Early in 1961 Local 655 began organizing Gem's Southway employees. Gem resisted vigorously, and the dispute eventually led to picketing by the union and unfair labor practice charges by Gem. The picketing affected Gem's business, and after it had continued for some three and a half months the parties through authorized representatives made a "settlement" whereby they agreed to include Northway employees in the bargaining unit which Local 655 was attempting to organize, and Gem granted Local 655 permission to enter its stores for the purpose of soliciting union membership.

This "settlement" took place on or about August 11, 1961. Nothing in the record suggests that any substantive concessions were made, contemplated, or otherwise involved therein. Specifically, there was no tangible hint that Local 655 would, if and when it established itself as bargaining agent, demand any less than would another union in negotiating a collective agreement with Gem on behalf of the employees.

Local 655 organizers were permitted on the premises within a short time after August 11. On September 2, a neutral observer determined that a majority of employees in the two-store bargaining unit had signed union authorization cards in favor of Local 655. The union was thereafter recognized as the employees' bargaining representative, and on or about September 8 Gem and Local 655 executed a union shop contract.

No claim is made that any of the events outlined heretofore constitute unfair labor practices. Compare Coppus Engr. Corp. v. NLRB, 1 Cir., 240 F.2d 564, 572–573 (order set aside).

The unfair labor practices here charged are bottomed upon the following incidents:

1. A speech made by Northway manager Schwartz at meetings of Northway and Southway employees on or about August 30, 1961, which meetings the employees were required to attend on company time.

2. An order by Northway's assistant manager Sherman on August 24, 1961, to Merk, an organizer for Local 770 who was distributing union handbills on the company parking lot, to leave the premises.

3. Assistant manager Sherman's order on August 30, 1961, to Merk, who had gained entrance to the Northway store by use of a borrowed membership card and who was soliciting for Local 770, to leave the premises.

The examiner found that the speech made on behalf of management to Gem employees merely informed the employees that the management was no longer hostile to the union, that the speech contained no threats of reprisals or promises of benefits, and that it was within the protection of § 8(c) of the Act, which provides:

"The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit."

The examiner states:

"The General Counsel, however, also contends that the speeches in question constituted 'Urging and soliciting employees' to sign authorization cards for and/or to join the Respondent Union. As I read it (the same speech was made separately, on different occasions, to two different groups of employees), it has no such connotation but simply served to inform the employees that the parties involved were no longer 'at war,' that the Employers had given permission to the Union to solicit them at their work stations, and that they were free to sign authorization cards for the Union if they desired to do so."

We have carefully scrutinized the contents of the speech and agree with the foregoing comment. The whole purport of the speech is that Gem is no longer at war with Local 655 and that employees are free to join such union if they choose to do so. There is absolutely nothing in the speech which shows any insistence that the employees join the union. It is in no sense coercive. The Board in its opinion discusses the speech at some length, but it is not clear as to the significance, if any, attributed to the speech. The General Counsel in brief urges that the speech is a factor to consider with all the evidence in passing upon the unfair labor practices.

■ An employer is entitled under the First Amendment to the Constitution to express his preference in a labor dispute, absent restraint or economic coercion. Such right is expressly recognized in § 8(c). See Kimbrell v. NLRB, 4 Cir., 290 F.2d 799, 802; NLRB v. Englander Co., Inc., 9 Cir., 260 F.2d 67, 76.

The speech made by manager Schwartz to the employees lends no support to the unfair labor practices charged.

■ We now pass to the problem presented by the expulsion of Merk from the Gem premises on the two occasions heretofore related. The validity and reasonableness of Gem's long established rule prohibiting solicitation on the premises is not here attacked. The right to make reasonable rules of this type is well established. NLRB v. United Steelworkers of America, CIO, 357 U.S. 357, 78 S. Ct. 1268, 2 L.Ed.2d 1383; NLRB v. Babcock & Wilcox Co., 351 U.S. 105, 76 S. Ct. 679, 100 L.Ed. 975.

■ The crux of the complaint here is that since Gem permitted Local 655 to solicit upon the premises, it is guilty of an unfair labor practice in discriminatorily refusing to grant Local 770 a like privilege. Such contention is completely answered by the findings of the examiner that Local 655 had sought and obtained permission to solicit on the premises from Gem's appropriate officials and that Local 770 had not sought such permission. Upon this issue, the examiner states:

"In these cases the General Counsel's witness Raymond Merk was the only representative of the Charging Party who was shown to have made

any attempt, at any time, to organize the employees involved. On neither of the occasions when he was ejected from the Respondent Employers' premises did he ask for permission to solicit the employees on said premises. On the second such occasion he merely suggested that the Respondent Union's representatives 'should be asked to leave' said premises. Assistant Store Manager Sherman ejected him on both occasions, the first time because he was soliciting without permission and the second time because he was in one of the stores on a 'borrowed' card contrary to the Respondent Employers' uniformly enforced policy of not permitting anyone to enter or remain in their stores without a valid non-transferable membership card. Sherman was not shown to have been in charge of the store on either of such occasions and there is no evidence in the record to show that he even knew the conditions under which the Respondent Union had been granted permission to solicit employees on the Respondent Employers' time and premises or that he had authority to do likewise. In the absence of any evidence of a request it cannot be said that permission would not have been granted to the Charging Party. Under such conditions I cannot find that the Charging Party was denied such permission."

Such findings are supported by overwhelming if not undisputed evidence. The Board upon the permission issue states:

"In dismissing the General Counsel's complaint, the Trial Examiner found that Merk's failure to request GEM permission to solicit its employees in the store precluded a finding that the right had been denied Local 770, and, therefore, that there had been no disparate treatment as between the two unions. We disagree. While it is true that neither Merk nor other officials of Local

770 specifically requested such permission, we find that, in the circumstances, a specific request was not necessary to put Respondent on notice of Local 770's organizational aims. Thus, Merk's presence in the Northway store and his stated reason that he was soliciting on behalf of Local 770 certainly was tantamount to notice, if not such a request, to the Respondent Employer that Local 770 sought organizational opportunities equal to those then being enjoyed by Local 655. Moreover, it is at least conjectural that had a specific request been made, it would have been futile. For Merk was ejected from the store on the grounds he did not possess a GEM membership card. This occurred at the same time that organizers for Respondent Union freely toured the store securing employees' signatures. In the circumstances, we find that disparate treatment during a period of competing organizational efforts in fact existed, and that it was violative of Section 8(a) (2) of the Act."

We observe that the Board agrees with the examiner's finding that no specific request for the right to solicit was made by Merk or his union. The Board appears to treat the notice to Sherman created by Merk's wrongful entrance upon the premises to solicit for Local 770 as the equivalent of a request to Gem.

We think, as hereinafter set out, that the Board's view on this request issue is not supported by the applicable law or by the record as a whole.

Section 8(a) (1) prohibits employer interference with the employees' right of self-organization. However, it imposes no special duty upon employers for the benefit of nonemployee organizers such as Local 770. It is only when (and insofar as) the employees themselves would be denied organizational rights that the employer must permit outside organizers to come onto the premises; the organizers' own interests are entirely secondary. This distinction was quite ex-

plicitly stated in NLRB v. Babcock & Wilcox Co., 351 U.S. 105, 113, 76 S.Ct. 679, 100 L.Ed. 975, which case establishes that an employer no-solicitation rule is not invalid per se.

The Court further established in NLRB v. United Steelworkers of America, 357 U.S. 357, 78 S.Ct. 1268, 2 L.Ed. 2d 1383, that it is not per se an unfair labor practice under § 8(a) (1) for an employer to enforce an otherwise valid no-solicitation rule against outside organizers while, at the same time, such employer himself engages in vigorous anti-union solicitation which would violate the no-solicitation rule if done by an outsider. The Steelworkers problem is analogous to ours. In Steelworkers the convergence of circumstances tended to limit communication on the issue of whether the employees should organize or not; in our case the issue involved is what course the organization should take —what outside union should be chosen as the bargaining representative.

By analogy it should follow that the enforcement of an otherwise valid no-solicitation rule against one union, but not against another, is not *per se* illegal. The employees' right to organize is certainly no less basic or entitled to protection than is their right to choose among different bargaining representatives.

What factors, then, determine whether a disparate application of a no-solicitation rule is illegal? It is helpful in answering this to pursue our analogy and examine the Steelworkers decision more closely. Two cases were under review in Steelworkers. In one the Board had found no violation and its order was modified by the court of appeals. United Steelworkers v. NLRB, 100 U.S.App.D.C. 170, 243 F.2d 593. In the other the Board had found a violation, but that ruling was denied enforcement. NLRB v. Avondale Mills, 5 Cir., 242 F.2d 669. The Supreme Court, 357 U.S. 357, 78 S. Ct. 1268, 2 L.Ed.2d 1383 agreed with the Fifth Circuit, but not with the D.C. Circuit; it held in both cases that no violation was shown.

The Court emphasizes two factors in support of its conclusion. One is the following, which would apply in our case:

"No attempt was made in either of these cases to make a showing that the no-solicitation rules truly diminished the ability of the labor organizations involved to carry their messages to the employees. Just as that is a vital consideration in determining the validity of a no-solicitation rule, see Republic Aviation Corp. v. Labor Board, supra [324 U.S. 793], at 797–798 [65 S.Ct. 982 at pages 985–986, 89 L.Ed. 1372]; Labor Board v. Babcock & Wilcox Co., supra [351 U.S.] at [page] 112, [76 S.Ct. at page 684] it is highly relevant in determining whether a valid rule has been fairly applied. Of course the rules had the effect of closing off one channel of communication; but the Taft-Hartley Act does not command that labor organizations as a matter of abstract law, under all circumstances, be protected in the use of every possible means of reaching the minds of individual workers, nor that they are entitled to use a medium of communication simply because the employer is using it." 357 U.S. at 363–364, 78 S. Ct. at 1271–1272.

The other factor bears more directly on our problem: the Court emphasized that neither the employees nor the union on their behalf had asked the employer to permit pro-union solicitation. 357 U. S. at 363, 78 S.Ct. at 1271. In our case there is no evidence that any of the employees themselves even cared whether Local 770 could solicit on company property. But the union did attempt to solicit without permission, and it was in the circumstances surrounding those attempts that the Board found something it thought to be as good as a request— namely, notice of the union's desire to solicit. The cases before the Supreme Court presented even clearer evidence of such notice than does our case, but that did not affect the result. Also, in Steelworkers the employees were themselves

interested in the pro-union solicitation. Indeed, in one of the cases (Avondale Mills) the management summoned certain employees to the office and read to them a statement which began:

"It has come to our attention that you are attempting to solicit union membership in this plant during working hours * * *"

They were ordered to cease on pain of prompt dismissal.

The only substitute for a request for permission which the Steelworkers Court acknowledged was a finding that a request would be rejected if made. It was recognized that the Board might reach such conclusion as a matter of industrial experience. This has not been done in our present case where the Board said only that the conclusion is "at least conjectural." As for basing such a conclusion on record evidence, the Court did not regard the "clear anti-union bias of both employers" sufficient to change the result in either of the cases before it—and that, despite the fact that one employer's bias went to the extent of committing unfair labor practices. In our case there is no substantial evidence of any bias, the strongest evidence being the mere fact that one union was able to solicit, but not the other.

Support can also be found in Kimbrell v. NLRB, 4 Cir., 290 F.2d 799, for the view implicit in the trial examiner's report (quoted above) that a request for permission to solicit, or notice of such desire, should be clear and specific. Even assuming that Local 770 is entitled to solicit because Local 655 is so permitted, its access to company premises should be subject to the same or similar qualifications and conditions as Local 655's, see NLRB v. Brown Co., 1 Cir., 160 F.2d 449, 454, and its request for permission should take that into account. Compare Syracuse Color Press, Inc., 103 N.L.R.B. 377, 390. In Kimbrell, a union was permitted to address the employees on company property and on company time. An *employee* then specifically requested permission to campaign against the union in the plant during working hours, but

was refused. The court pointed out that she did not request permission to address the employees collectively as the union had done; in view of this fact, the company was justified in denying the broader request which she did make.

Numerous other cases suggest that in a situation such as ours (involving two unions) a request and denial are necessary to make out a violation. For example, the court in NLRB v. Brown Co., supra, said in overturning the Board's finding of violation under § 8(a) (1) and (2):

"In the first place no ultimate finding of an unfair labor practice can properly be predicated upon the subsidiary finding that the respondent permitted the Association to organize in its plant, on its time, and with the aid of its telephone and other facilities. The reason for this is [in part] that there is no evidence that the Union requested and was denied similar privileges * * *." 160 F.2d at 454.

Accord, Wayside Press, Inc. v. NLRB, 9 Cir., 206 F.2d 862, 866 (enforcement denied). Also see Bargain City, U.S.A., Inc., 129 N.L.R.B. 93, 97 (complaint dismissed); Essex Wire & Assoc. Mach., Inc., 107 N.L.R.B. 1153, 1157.

The request to management for solicitation rights obviously serves a useful and legitimate purpose. The establishments here involved are retail stores, and it is apparent that an excess number of solicitors on the premises at a busy time might well materially interfere with the selling operations. The request for permission enables management at its appropriate level to consider all aspects of the request and to impose reasonable conditions or restrictions upon any right that may be granted. Sherman, the only person to whom "notice" of Local 770's desire was given, was far removed from the "appropriate level" of Gem management. The record shows that, although Sherman did help carry out Gem's labor policies, he did not participate in their formulation. He was the third man in charge of Northway, fol-

lowing the manager and the general or city manager. Even the Northway manager Schwartz did not participate in making the arrangements with Local 655; he was told of it by an official of Gem International (the parent corporation). During the earlier dispute with Local 655 Gem had insisted that Northway and Southway employees should be organized, if at all, as a single unit, and that was made a specific term of their "settlement." Quite evidently, Gem had a right to impose conditions upon solicitation by other outside labor organizers, which conditions would necessarily have been worked out by someone whose authority extended to both Northway and Southway.

■■ The Board's theory—that an unauthorized entry upon the employer's premises for the known purpose of union solicitation is somehow equivalent to a request for permission to solicit—is unsound. In effect, such a theory would completely abolish and eliminate the requirement almost uniformly contained in the cases heretofore discussed that a request for permission to solicit is required.

■ We find no substantial evidentiary basis upon the record as a whole for the Board's decision that, contrary to the examiner's findings, the petitioners were guilty of unfair labor practices by reason of the speech made by manager Schwartz and the two exclusions of Merk from Gem's premises.

On September 2, 1961, Local 655 requested recognition as the exclusive bargaining agent of the employees. The company caused a third-party check to be made of the union authorization cards submitted. Such check revealed that 168 of the 292 employees had signed proper authorization cards, and upon such basis Gem recognized Local 655 as the bargaining agent of its employees and thereafter on September 8, 1961, executed the labor contract with the union.

The asserted illegality of the recognition accorded to the union, and of the labor contract entered into, is based upon the Board's determination that the union obtained a majority as the result of unfair labor practices. Our determination that no unfair labor practices were involved in obtaining the majority employee authorization leaves the Board's conclusion (that the recognition and the contract entered into are illegal) without any evidentiary support.

The petitions to vacate the Board's order are granted. Enforcement is denied.