NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

COUNCIL MANUFACTURING CORPO-
RATION, Respondent.

No. 17534.

United States Court of Appeals
Eighth Circuit.

July 13, 1964.

Morton Namrow, Attorney, N. L. R. B., Washington, D. C., Arnold Ordman, General Counsel, N. L. R. B., Washington, D. C., Dominick L. Manoli, Associate General Counsel, N. L. R. B., Washington, D. C., Marcel Mallet-Prevost, Asst.

General Counsel, N. L. R. B., Washington, D. C., and Elliott Moore, Attorney, N. L. R. B., Washington, D. C., for petitioner.

Edgar E. Bethell, of Bethell & Pearce, Fort Smith, Ark., for respondent.

Before VAN OOSTERHOUT, BLACKMUN and MEHAFFY, Circuit Judges.

BLACKMUN, Circuit Judge.

The National Labor Relations Board seeks enforcement here of its 3-member panel order issued June 26, 1963, directed to Council Manufacturing Corporation. 143 NLRB No. 23. The Board adopted the trial examiner's findings and conclusions to the effect that Council had violated § 8(a) (1) and (3) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 158(a) (1) and (3). Specifically, it found a § 8(a) (1) violation in the plant engineer's alleged statement that the company's president would close or automate the plant in the event of unionization, and § 8(a) (3) and (1) violations in the discharge of employee James N. Lott. The union concerned is Allied Industrial Workers of America, AFL-CIO.

The facts are not in much dispute. Council has a plant, which was not organized, on the north side of Fort Smith, Arkansas. It manufactures icemaking machines. Lott, during the last war, worked in defense industry in various machinist capacities. He held membership in the International Association of Machinists Union with a general machinist's rating. For many years, before and after his defense work and up to 1956, he was a professional wrestler.

Lott found employment with Council in May 1960. He was hired as a common laborer at $1.25 an hour. Four months later the employee who did machine work for Council left its employ. Lott spoke to the president and got the job of company machinist. In three weeks his pay was increased to $1.40. In the latter part of 1961 Lott threatened to leave because he had not received a further raise which he claimed had been promised. His rate was increased to $1.75 and he stayed on. The same thing happened in January 1962 and his pay was advanced to $2. He remained at this level until his termination on November 19, 1962. The $2 rate was the highest paid any non-supervisory employee in the plant. The quality of Lott's work was not questioned.

Lott also had outside activity. For some years he leased and operated the sports arena in Fort Smith. He rented this place for union meetings, including those of Allied, and for public gatherings. He promoted wrestling matches. He appeared on a weekly television wrestling interview program which in 1961 was sponsored by Council.

In January 1961 some of the plant employees asked Lott to head a campaign to organize the plant for the Machinists' Union. He discouraged that move at that time. A similar request was made of him in September 1962 when the inquiring employees indicated that they were interested in Allied. Lott got in touch with Clarence Gilmore, the union representative. Gilmore at the time was busy elsewhere but said that if Lott wanted to go ahead he should do so and "see what [he] could do". Lott and his helper, Taylor, proceeded to talk to employees. He was in touch with Gilmore again in November. He told Gilmore that the employees were ready to have a meeting. It was arranged that one would be held at the sports arena at 4:30 P.M. on Monday, November 19, immediately after work. Employees were notified orally of this meeting.

About fifteen minutes before quitting time on November 19 Lott was called to the office of Plant Manager Beith and told he was being terminated. Lott testified that Beith then said that this was because "We are just going to close the machine shop entirely down, and contract all of the work out". Lott returned to the plant on the following day to pick up his tools. He saw Mr. Council, the president, and asked him why he was discharged and whether the union meeting had anything to do with it. Lott

testified that Mr. Council replied, "No, it wasn't the Union at all. In fact, he was not against the Union, but he did not like for the racketeers to come in like they were on the * * * south side of town" [where the company's other Fort Smith plant was located].

Beith had been engaged by Council on November 9, 1962. He reported for work on November 15. This was only four days prior to Lott's discharge. He was placed in complete charge of all production. Beith testified that he spent his first days acquainting himself with the plant; that he observed a lack of activity in the machine shop area; that over the weekend he analyzed the personnel records and found that Lott was receiving higher pay than the next employee and more than his lead man; that he decided that the work "was repetitive machine operator work rather than machinist"; that because of this and because the wages were out of line he decided to discharge Lott; that in his termination interview with Lott he told him that they did not have the work load to maintain two men in the machine shop; that he had not complained about the quality of Lott's work and, so far as he knew, his work was acceptable; that Lott has not been replaced by another machinist; that, after he left Taylor carried on the work without overtime and had no difficulty in maintaining the work load; that when Lott was discharged he, Beith, had no knowledge of any union activity in the plant; that he learned of the union meeting only on the following morning; that he had made other changes in personnel and production since he had been with the plant; and that Lott's interest in the union had no bearing whatsoever upon his discharge which "was an action of economic necessity as I saw it". On cross-examination Beith stated that the next employee separation he effected was that of a supervisor on December 11; that he discharged no other non-supervisory employee; that he arranged for Taylor to have a helper at times; that the work force at the plant had been increased by 40 or 45 people start-ing about November 26; and that Taylor was doing everything that Lott did before the latter was laid off.

Lott testified that about November 1 Plant Manager Corbell told him, when they were discussing a newspaper item about a union, "Before we have a union here, Mr. Council would close it down, or put it in automation". There was no corroboration. Corbell denied making this statement.

The employer reminds us of certain established rules applicable to these enforcement proceedings. We have these and others in mind:

■ 1. In determining the issue of substantiality of the evidence under § 10 (e) of the amended Act, 29 U.S.C.A. § 160(e), we must consider the record as a whole and in the light of the Supreme Court's observation that

"Congress has merely made it clear that a reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view."

Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951). Each of us, in writing for this court, has had occasion recently to note and apply Universal Camera's standard. N. L. R. B. v. International Bhd. of Boilermakers, 321 F.2d 807, 810 (8 Cir. 1963); Gem International, Inc. v. N. L. R. B., 321 F.2d 626, 627–628 (8 Cir. 1963); N. L. R. B. v. Fruin-Colnon Constr. Co., 330 F.2d 885, 889–890 (8 Cir. 1964); Bituminous Material & Supply Co. v. N. L. R. B., 281 F.2d 365, 367 (8 Cir. 1960). The court also did this in A. P. Green Fire Brick Co. v. N. L. R. B., 326 F.2d 910, 912 (8 Cir. 1964) and N. L. R. B. v. Arkansas-Louisiana Gas Co., 333 F.2d 790 (8 Cir. 1964).

■ 2. The General Counsel has the burden of proving an unfair labor prac-

tice by a preponderance of the evidence. Iowa Beef Packers, Inc. v. N. L. R. B., 331 F.2d 176, 182 (8 Cir. 1964); Cedar Rapids Block Co. v. N. L. R. B., 332 F.2d 880, 884 (8 Cir. 1964); Bituminous Material & Suppy Co. v. N. L. R. B., supra, p. 367 of 281 F.2d.

■ 3. "The near coincidence of the layoffs with the union activity, without more, is not substantially indicative of a discriminatory motive". Beaver Valley Canning Co. v. N. L. R. B., 332 F.2d 429, 432 (8 Cir. 1964). And "The mere discharge of an employee with or without reason is * * * not evidence of intent to affect labor unions or the rights of employees under the National Labor Relations Act". N. L. R. B. v. Late Chevrolet Co., 211 F.2d 653, 656 (8 Cir. 1954), citing N. L. R. B. v. Citizen-News Co., 134 F.2d 970, 973 (9 Cir. 1943).

■■ 4. But this court has also observed that coincidence in union activity and discharge renders an employer vulnerable and serves to make the discharge issue one of fact. N. L. R. B. v. Des Moines Foods, Inc., 296 F.2d 285, 289 (8 Cir. 1961); N. L. R. B. v. Twin Table & Furniture Co., 308 F.2d 686 (8 Cir. 1962); N. L. R. B. v. Standard Metal Fabricating Co., 297 F.2d 365, 366 (8 Cir. 1961). Twice recently we have noted the difficulty and sensitivity of a coincidence of this kind, the choice which then confronts the trier of fact, and the necessary result that, if the fact trier's determination is supported by an adequate evidentiary basis, this court cannot retry the suit. N. L. R. B. v. Byrds Mfg. Co., 324 F.2d 329, 332–333 (8 Cir. 1963); N. L. R. B. v. Trumbull Asphalt Co., 327 F.2d 841, 842 (8 Cir. 1964).

This brings us to the significant facts and the issues of this particular case.

■ A. Discharge. We conclude that there was substantial evidence here on the record considered as a whole to sustain the Board's finding of discrimination in Lott's employment. We recognize that the employer as well as the employee has certain basic rights to terminate an open contract of employment. We are aware, too, that the facts here show that Lott had the highest pay of all the non-supervisory employees in the plant; that there was evidence to the effect that the company had a history of no union animus; that Beith had been placed in full charge; that he may well have felt that Lott's high pay, in view of the nature of the machine work required at the plant, was an expense the company could easily and obviously do without; that, after Lott had departed, Taylor was able to run the machine shop acceptably and without overtime; and that unionism was a subject which had been freely and openly discussed in the plant for some time. But these facts did not impress the examiner or the Board as constituting the real reason for Lott's discharge.

A discharge may not be effected for a reason made improper under the Act. N. L. R. B. v. South Rambler Co., 324 F.2d 447, 449 (8 Cir. 1963). Here, factors opposing Council's position are present: the firing at the very time of union activity and, indeed, within an hour of the first called meeting of the employees; the proved knowledge of at least one supervisory employee on the morning of November 19 that the meeting was to take place late that afternoon; the absence of complaints about the quality of Lott's work; his several raises over the short period of his employment; the employer's previous estimate of his value as indicated by the two increases readily given on request in the face of offers elsewhere; Lott's other duties; his working 40 hours a week while others were on a 32-hour week; the peremptory character of his discharge with an absence of thorough investigation by Beith as to the extent of Lott's work, and hence its value, and as to the demands of the busy season in the company's variable year; the lack of a dismissal of any other rank and file employee; the later increase in the work force; and the fact that Lott because of his Machinists membership, was the logical person for the employees to approach when they became interested in organizing. These factors in the ag-

gregate, plus the inferences which may reasonably flow therefrom, meet the substantiality test. Inasmuch as they do, and despite the fact that each of us might well have decided the discharge issue in the first instance in the company's favor, we are not at liberty to disturb the Board's findings now. N. L. R. B. v. Byrds Mfg. Co., supra, p. 333 of 324 F.2d, and cases cited.

■ B. Interference and restraint. The Board's conclusion as to this issue rests on the single statement attributed by Lott to Plant Manager Corbell to the effect that Mr. Council would close down the plant or automate it "before we have a union here", and on the fact that this statement was uttered, if at all, after Lott's September contact with Gilmore.

We regard this disputed testimony, despite its creditation by the trial examiner and by the Board, and despite its characterization in the Board's brief as "an obvious violation", as too thin a crust on which to rest anything as serious as a § 8(a) (1) violation. We have the impression that the Board of late has tended to overstretch on this type of issue and that, in the light of Universal Camera, a foundation of much greater substance is required than the isolated statement present here. We have refused enforcement in similar situations, particularly on interrogation, in recent cases. N. L. R. B. v. Trumbull Asphalt Co., supra, p. 844 of 327 F.2d; N. L. R. B. v. Twin Table & Furniture Co., supra, pp. 686–687 of 308 F.2d; Beaver Valley Canning Co. v. N. L. R. B., supra, p. 433 of 332 F.2d. The facts here fall far short of those in our cases of N. L. R. B. v. Byrds Mfg. Co., supra, p. 332 of 324 F.2d, and Marshfield Steel Co. v. N. L. R. B., 324 F.2d 333, 335–336 (8 Cir. 1963), which are cited to us by the Board. We note that Lott conceded that no other person whom he regarded as having any supervisory authority in Council ever said anything to him to this effect; that his testimony as to when the conversation took place was not consistent; that he felt it was not directed at him personally; and that it "was just a general conversation" which arose in a discussion of a newspaper article. All this adds up to nothing more than mere suspicion. That is not enough. Bituminous Material & Supply Co. v. N. L. R. B., supra, p. 367 of 281 F.2d, and cases cited; N. L. R. B. v. Byrds Mfg. Co, supra, p. 332 of 324 F.2d.

The petition for enforcement is granted only insofar as it concerns Lott's employment. In all other respects it is denied.