**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SENFTNER VOLKSWAGEN CORPORATION, Respondent.**

No. 82–1032.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1982.

Decided July 8, 1982.

Alaniz, Bruckner & Sykes, Arthur T. Carter, James C. Zalewski, Lincoln, Neb., for respondent.

James Y. Callear, Atty., William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D. C., for petitioner.

Before LAY, Chief Judge, FAIRCHILD,* Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

---

* Thomas E. Fairchild, Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

PER CURIAM.

Senftner Volkswagen Corporation (Company) seeks review and reversal of an order of the National Labor Relations Board (Board) resulting from the Board's determination that the Company violated the National Labor Relations Act. The Board, in agreement with the administrative law judge (ALJ), found the Company violated section 8(a)(1) and (3) of the Act by refusing to reemploy John Newman because of his union sympathies. The Board also agreed with the ALJ that the Company violated section 8(a)(1), (3), and (4) by withdrawing a subsequent offer of employment because Newman's union filed an unfair labor practice charge on Newman's behalf. The Company urges these determinations are not supported by substantial evidence on the record as a whole.

James Senftner is president of the Company, which sells and services automobiles at Sioux City, Iowa. James Senftner spent much of his time away from Sioux City and left Dennis Senftner, his nephew, in charge of the day-to-day operation of the Sioux City facility at all relevant times. In 1977, District No. 162, International Association of Machinists and Aerospace Workers (Union) was certified as the bargaining unit at the Company. John Newman, then a mechanic in the service department and a member of the Union's negotiating committee, was one of the signatories to the agreement. Thereafter, he served as an assistant shop steward and as shop steward, the latter post he held when he was promoted to a management position.

His employers considered Newman an excellent mechanic. In August 1979, Dennis Senftner offered Newman the position of service manager. At that time, he told Newman if he was not successful at the job or did not like it he could return to the shop as a mechanic. After checking with the secretary-treasurer of the Company, Dennis Senftner told Newman that a section in the

contract covered such a return.[1] Newman accepted the promotion, but within two months asked for his old job back. Dennis Senftner encouraged Newman to continue as service manager, but after Newman made a number of requests for his old job, Dennis promised that he would soon find a replacement and said that Newman might return to the shop as a "working foreman." No replacement suitable to Senftner was found.

In January 1980, Newman's job performance deteriorated. On January 25, Dennis Senftner told Newman that he was discharged and gave as a reason only that James Senftner had decided to terminate him. The younger Senftner acknowledged that he had previously promised Newman that he could return to the shop. Dennis told Newman that he would contact his uncle with regard to Newman's old job. The following conversation then ensued between them:

> Dennis: This is off the record and if it's brought up again, I'll deny it, but ... if you go back to the shop, are you going to join the Union?
>
> Newman: What the hell has the Union got to do with it? It was your promise.

Dennis then told Newman that James Senftner told him that if Newman went back out in the shop and joined the Union, that it would make the Union twice as strong and James just would not have that. Senftner also said "I'm almost sure that I can get your [old] job back."

The following day, Dennis Senftner told Newman that his uncle denied Newman his old job and that any commitment made by Dennis was a promise the latter could not keep. A short time later, Dennis denied Newman some pay Newman believed he was owed. Newman then had the Union write a letter to the Company asking for the money and advising of the possibility of a lawsuit. The letter was dated January 30.

On February 8, with at least the concurrence of his uncle, Dennis Senftner telephoned Newman to offer him a job as a mechanic. Newman did not accept immediately, so the next day Dennis phoned Newman to set up an appointment for February 11.

Also on February 9, the Company received the copy of the unfair labor practice charge mailed to it by the Union on February 7. Newman kept the February 11 appointment, but Dennis Senftner did not. During the next week, Newman phoned Dennis three times about the job. On February 13, Dennis told Newman that he had to check with the acting service manager. On February 15, he was told that things were slow and he was on temporary layoff. Finally, on February 18, Dennis Senftner told Newman that he was terminated.

*Refusal to Rehire.*

■ The Company clearly violated section 8(a)(3) if it refused to rehire Newman because of union considerations. *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 183–86, 61 S.Ct. 845, 847–848, 85 L.Ed. 1271 (1941). The principal question is whether the employer was motivated by antiunion animus. *NLRB v. Melrose Processing Co.*, 351 F.2d 693, 697 (8th Cir. 1965). Intent is subjective and in many cases can be proved only by the use of circumstantial evidence. In analyzing the evidence, circumstantial or direct, the Board is free to draw any reasonable inference. It may also choose between fairly conflicting views of the evidence, but it cannot rely on suspicion, surmise, implications, or plainly incredible evidence. *McGraw-Edison Co. v. NLRB*, 419 F.2d 67, 75–6 (8th Cir. 1969).

■■ There is no question that Newman was very active in the Union before his

1. The section of the collective bargaining agreement provided:

> If an employee leaves the bargaining unit to take a supervisory job with the right to hire or fire, or effectively recommend, he shall have sixty days to keep his seniority rights. If he does not go back into the bar-

gaining unit within said sixty (60) days, he automatically cancels all seniority rights.

The ALJ concluded that by its acquiescence to that provision, the Company agreed that a supervisor could be returned to the bargaining unit as a rank and file employee.

promotion to service manager. It is also reasonably certain that Dennis Senftner asked Newman whether he would rejoin the Union if he went back to the shop and that the younger Senftner stated that if Newman rejoined the Union it would be twice as strong—and that James Senftner "just wouldn't have that." Certainly, this evidence is a prima facie showing sufficient to support the inference that Newman's union activity was a motivating factor in the refusal to rehire. Thus, the Company has the burden of demonstrating that it would not have rehired Newman if he had not participated in protected activity. *Wright Line, a Division of Wright Line, Inc.*, 251 NLRB 1083, 1089 (1980), *enforced*, 662 F.2d 899 (1st Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982) *cited with approval in NLRB v. Fixtures Manufacturing Corp.*, 669 F.2d 547, 550 (8th Cir. 1982).

We find the Company failed to carry its burden. Newman's inability to get along with people existed when he was a mechanic and apparently did not interfere with his skill or proficiency in that job. Moreover, the Company is unable to substantiate its claims of additional poor work habits. Nor did it offer Newman any of these reasons when it refused to reemploy him or withdraw its offer of employment. The Board's conclusion that these reasons are pretextual is supported by substantial evidence on the record as a whole. Thus, we find the Company violated section 8(a)(3) and (1) of the Act.

*Withdrawal of Offer of Employment.*

■ The Company violated section 8(a)(4) if it withdrew its subsequent offer of employment because Newman filed an unfair labor practice charge against it. *Dubin-Haskell Lining Corp. v. NLRB*, 386 F.2d 306, 309 (4th Cir. 1967). The employer's motivation is the decisive factor in determining whether there has been a violation. *Id.*

On February 8, Dennis Senftner offered to employ Newman as a mechanic. On February 9, before Newman had accepted the offer, the Company received the unfair labor practice charge. Then, on February 18, after Dennis Senftner failed to keep an appointment with Newman and twice refused to tell Newman when or whether he could begin work, Newman was informed he was terminated.

The only event of significance that occurred between February 8 and February 18 was the Company's receipt of the unfair labor practice charge. The coincidence in time of the Company's receipt of the charge and its withdrawal of the employment offer supports the inference that the Company acted for improper reasons. *McGraw-Edison Co.*, 419 F.2d at 75; *NLRB v. Council Manufacturing Corp.*, 334 F.2d 161, 164 (8th Cir. 1964). In addition, the Company did not offer a reasonable explanation to Newman at the time it terminated him. Dennis Senftner offered the implausible explanation that Newman was not hired because business was slow—when several times in 1980 he stated the need for good mechanics. Moreover, the evidence supports the finding that Dennis Senftner had apparent authority to hire Newman, and that his offer was made with at least the concurrence of James Senftner. Thus, the implausible defense that Dennis Senftner lacked authority buttresses a finding that the withdrawal was illegally motivated.

This combination of factors supports the conclusion that the Company's action was illegally motivated. *See McGraw-Edison Co.*, 419 F.2d at 75. We are not dissuaded from this conclusion by the Company's argument that the withdrawal of the offer was due to a policy. The facts are clear that after the adoption of the collective bargaining agreement there was no such policy.

We find that the Board correctly applied the law and that, when the record is viewed in its entirety, there is substantial evidence to justify its findings that the Company violated section 8(a)(1), (3), and (4) of the Act. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464–465, 95 L.Ed. 456 (1951). We thus enforce the order of the Board.